Justice Alito,
concurring in part and concurring in the judgment.
I concur in the judgment, but I do not agree with the opinion of the Court insofar as it suggests that restrictions upon *133 legislators’ voting are not restrictions upon legislators’ speech. Ante, at 125-126. As respondent notes, “[o]ur history is rich with tales of legislators using their votes to express deeply held and highly unpopular views, often at great personal or political peril.” Brief for Respondent 23. To illustrate this point, respondent notes, among other famous incidents, John Quincy Adams’ vote in favor of the Embargo Act of 1807, a vote that is said to have cost him his Senate seat, and Sam Houston’s vote against the Kansas-Nebraska Act, a vote that was deeply unpopular in the South. Id., at 23-24 (citing J. Kennedy, Profiles in Courage 48, 109 (commemorative ed. 1991)).
In response to respondent’s argument, the Court suggests that the “expressive value” of such votes is “ ‘not created by the conduct itself but by the speech that accompanies it.’ ” Ante, at 127. This suggestion, however, is surely wrong. If John Quincy Adams and Sam Houston had done no more than cast the votes in question, their votes would still have spoken loudly and clearly to everyone who was interested in the bills in question. Voting has an expressive component in and of itself. The Court’s strange understanding of the concept of speech is shown by its suggestion that the symbolic act of burning the American flag is speech but John Quincy Adams calling out “yea” on the Embargo Act was not. Ibid*
A legislative vote is not speech, the Court tells us, because the vote may express, not the legislator’s sincere personal view, but simply the view that is favored by the legislator’s constituents. See ibid. But the same is sometimes true of legislators’ speeches.
Not only is the Court incorrect in its analysis of the expressive character of voting, but the Court’s position is inconsistent with our reasoning just last Term in Doe v. Reed, 561 U. S. 186 (2010). There, respondents argued that “signing a petition is a legally operative legislative act and there *134 fore ‘does not involve any significant expressive element.’ ” Id., at 195 (quoting Brief for Respondent Reed, O. T. 2009, No. 09-559, p. 31). But the Court rejected this argument, stating:
“It is true that signing a referendum petition may ultimately have the legal consequence of requiring the secretary of state to place the referendum on the ballot. But we do not see how adding such legal effect to an expressive activity somehow deprives that activity of its expressive component, taking it outside the scope of the First Amendment.” 561 U. S., at 195.
But cf. id., at 219 (Scalia, J., concurring in judgment) (“I doubt whether signing a petition that has the effect of suspending a law fits within 'the freedom of speech’ at all”).
Our reasoning in Reed is applicable here. Just as the act of signing a petition is not deprived of its expressive character when the signature is given legal consequences, the act of voting is not drained of its expressive content when the vote has a legal effect. If an ordinary citizen casts a vote in a straw poll on an important proposal pending before a legislative body, that act indisputably constitutes a form of speech. If a member of the legislative body chooses to vote in the same straw poll, the legislator’s act is no less expressive than that of an ordinary citizen. And if the legislator then votes on the measure in the legislative chamber, the expressive character of that vote is not eliminated simply because it may affect the outcome of the legislative process.
In Part III of its opinion, the Court demonstrates that legislative recusal rules were not regarded during the founding era as impermissible restrictions on freedom of speech. On that basis, I agree that the judgment below must be reversed.

See 17 Annals of Congress 50 (1807); see also 15 id., at 201 (1806).